UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HARLAN GENE WARD,

                Plaintiff,

v.                                                          5:16-CV-1038
                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LEGAL SERVICES OF CNY                           CHRISTOPHER CADIN, ESQ.
  Counsel for Plaintiff
221 South Warren St., Ste. 300
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                     MICHELLE L. CHRIST, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 18.) This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Harlan Gene

Ward ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 16.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part, and Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1963. (T. 207.) He completed the 11th grade. (T. 229.) Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD") and collapsed lung. (T. 228.) His alleged disability onset date is November 7, 2012. (T. 207.) His date last insured is June 30, 2016. (T. 29.) He previously worked as a sander. (T. 35.)

### B.    Procedural History

On July 15, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 105.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 12, 2015, Plaintiff appeared before the ALJ, David J. Begley. (T. 51-87.) On April 30, 2015, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 24-42.) On August 4, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 29-37.)  First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since November 7, 2012.  (T. 29.)  Second, the ALJ found that Plaintiff had the severe impairments of COPD, pleurisy, history of atelectasis, and status post left lung collapse.  (Id.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 31.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work; except, Plaintiff must avoid moderate exposure to irritants such as fumes, dust, gases, and poorly ventilated areas, and must avoid hazardous machinery, unprotected heights, and open flames.  (Id.)[1]  Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 36-37.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ gave improper weight to the medical evidence, thus failing to properly evaluate and develop the medical source information.

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

(Dkt. No. 11 at 8-12 [Pl.'s Mem. of Law].)  Second, Plaintiff argues his "borderline age" should have been considered.  (*Id.* at 12.)  Third, and lastly, Plaintiff argues the ALJ erred in his RFC assessment.  (*Id.* at 14-15.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues that the ALJ's decision was supported by substantial evidence.  (Dkt. No. 16 at 6-10 [Def.'s Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual

functional capacity' assessment, whether the claimant can perform any of
his or her past relevant work despite the impairment; and (5) whether there
are significant numbers of jobs in the national economy that the claimant
can perform given the claimant's residual functional capacity, age,
education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    The ALJ's Weighing of the Medical Opinion Evidence in the Record

The Second Circuit has long recognized the treating physician rule set out in 20

C.F.R. §§ 404.1527(c), 416.927(c).[2]  " '[T]he opinion of a claimant's treating physician

as to the nature and severity of the impairment is given 'controlling weight' so long as it

is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in the case record.' "  *Greek*

*v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117,

128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to

controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the

frequency, length, nature, and extent of treatment; (2) the amount of medical evidence

supporting the opinion; (3) the consistency of the opinion with the remaining medical

evidence; and (4) whether the physician is a specialist.' "  *Greek*, 802 F.3d at 375

(quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an

ALJ's reasoning and adherence to the Regulations is clear, she is not required to

---

[2]    Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have
other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was
filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under
the earlier regulations and SSRs.

explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Here, the record contained three medical source statements from treating sources.  (T. 577-579, 581-583, 585-587.)  The record further contained an examination and medical source statement from consultative examiner, Kalyani Ganesh, M.D.  (T. 353-359.)

Vanessa Gibson, M.D., provided a medical source statement dated February 3, 2015.  (T. 577-579.)  Therein, Dr. Gibson noted Plaintiff's diagnosis as bronchiectasis/chest pain.  (T. 577.)  She checked the space indicating that Plaintiff could sit for six hours in an eight hour workday and checked the space indicating that Plaintiff could not "be on his feet/either standing or walking" for six hours out of an eight hour workday.  (*Id.*)  Dr. Gibson wrote that Plaintiff could lift/carry up to 20 pounds and would "likely not" be able to push, pull, or twist.  (T. 578.)  When asked if Plaintiff had any environmental limitations, Dr. Gibson wrote "no dust or toxic gas."  (*Id.*)

James Sexton, M.D., Plaintiff's pulmonologist, completed a medical source statement dated February 10, 2015.  (T. 581-583.)  Dr. Sexton noted Plaintiff's

diagnosis and symptoms as "severe chest pain (chronic pleurisy)" and "severe

DOE/SOB." (T. 581.) He indicated Plaintiff's treatment and prognosis were poor. (*Id.*)

Dr. Sexton checked the space indicating that Plaintiff could not sit for six hours in an

eight hour workday, because he needed frequent repositioning. (*Id.*) Dr. Sexton

checked the space indicating that Plaintiff could not "be on his feet/either standing or

walking" for six hours in an eight hour workday, because of his "DOE." (*Id.*) When

asked to provide limitations regarding lifting/carrying, pushing/pulling/twisting,

climbing/crawling, and bending/squatting/kneeling, Dr. Sexton wrote "DOE." (T. 582.)

When asked if Plaintiff had any "environmental limitations (extremes of

heat/cold/humidity/dust/fumes, gases, etc)", Dr. Sexton wrote "yes to all." (*Id.*)

      Plaintiff's primary care providers with Family Health Network, Nita Formann, N.P.

and Douglas Rabner, M.D., completed a medical source statement dated February 11,

2015. (T. 585-587.) The providers wrote that Plaintiff could sit for 45 minutes "leaning

on right side." (T. 585.) The providers checked the space indicating that Plaintiff could

not sit for six hours in an eight hour workday, because he needed to move after 45

minutes to an hour. (*Id.*) The providers wrote that Plaintiff could stand/walk 15 to 20

minutes "around the block" at a "slow pace." (*Id.*) The providers checked the space

indicating that Plaintiff could not stand/walk for six hours in an eight hour workday,

because he frequently needed to use a respiratory inhalant with activities and had

increased pain with upper trunk and arm movement. (*Id.*) The providers wrote that

Plaintiff could lift/carry 10 to 15 pounds with his right side only and could not lift with his

left side. (*Id.*) The providers further indicated Plaintiff was limited in his ability to

push/pull/twist, climb/crawl, bend/squat/kneel, and reach overhead.  (T. 586.)  The providers noted Plaintiff had no environmental limitations.  (*Id.*)

On September 30, 2013, Dr. Ganesh performed an internal medical examination, conducted a pulmonary function test, and provided a medical source statement.  (T. 353-359.)  Dr. Ganesh opined that Plaintiff had "no gross physical limitation noted to sitting, standing, walking, or the use of upper extremities."  (T. 356.)  She further noted there did not appear to be any respiratory distress.  (*Id.*)

In weighing the medical opinion evidence in the record, the ALJ afforded Dr. Ganesh's opinion great weight, reasoning her opinion was consistent with evidence in the record that indicated Plaintiff's COPD was well controlled, Plaintiff did not allege shortness of breath, and spirometry testing indicated mild obstruction.  (T. 33-34.)  The ALJ also afforded "great weight" to the State agency medical consultants identified in Exhibits 1A and 2A.  (T. 35.)

The ALJ afforded each treating source "little weight."  (T. 34-35.)  The ALJ addressed each treating source specifically; however, he provided three identical reasons for affording each source's opinion little weight.  First, the ALJ stated that the opinions were "unsupported by the medical evidence in the record . . . spirometry testing demonstrated only a mild obstruction."  (T. 34-35.)  Second, the ALJ stated that the treating sources completed a "preprinted form with foregone conclusions asking for [his/her] agreement rather than [his/her] own opinion of [Plaintiff's] limitations."  (*Id.*)  Finally, the ALJ stated that none of the treating sources provided environmental limitations which the ALJ determined was "inconsistent with an individual with chronic

COPD." (*Id.*)  In addition, regarding Dr. Rabner's opinion, the ALJ stated that the opinion was "filled out by a nurse practitioner and only signed by the doctor."  (T. 35.)

Here, remand is recommended for a proper evaluation of the treating source opinion evidence in the record.  First, the ALJ relied heavily on pulmonary testing performed by Dr. Ganesh indicating "mild obstruction" to discount the treating source opinions.  (T. 32-35.)  However, the ALJ made no mention of two other pulmonary tests in the record indicating "moderate obstruction" with no improvement following bronchodilators.  On January 22, 2014, Plaintiff had a pulmonary function analysis performed.  (T. 479-480.)  Robert  Lenox, M.D., reviewed the results and concluded spirometry showed "moderate obstruction" with no improvement after bronchodilators. (*Id.*)  Plaintiff underwent pulmonary function analysis again in May of 2014.  (T. 566-567.)  Manju Paul, M.D., reviewed the results and concluded spirometry demonstrated "moderate obstructive defect."  (T. 568.)  To be sure, an ALJ's failure to cite specific evidence does not indicate that it was not considered.  *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005).  However, here the ALJ relied heavily on test results indicating "mild obstruction" to afford lesser weight to treating sources without mention of testing results which indicated "moderate" results.

Second, the ALJ erred in affording the treating sources less weight because their opinions were provided on a "preprinted form with foregone conclusions."  To be sure, an ALJ may afforded lesser weight to a physician's opinion where the opinion is provided on a check-box form and the physician fails to provide any narrative.  *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016).  In *Camille* the Court reasoned the ALJ properly afforded a treating source's opinion limited weight, in part, because the

opinion was provided on a check-box form, specifically requesting a narrative, which the doctor declined to complete.  *Camille*, 652 F. App'x at 27.  In *Silsbee v. Colvin*, No. 3:14-CV-0345 GTS/ATB, 2015 WL 4508599, at *13 (N.D.N.Y. July 23, 2015), the Court held that the ALJ properly rejected a treating source opinion where, with other reasons, the "check-box form . . . [did] not allow the physician to specify how many hours per day that the patient can sit, stand or walk."  However, unlike in *Camille* and *Silsbee*, the forms provided to Plaintiff's treating sources allowed the physicians to specify Plaintiff's limitations and the treating sources completed the narrative sections.

To be sure, the opinion provided by the treating sources were done so on "forms" and included questions asking for specific "yes" or "no" answers; however, the forms also contained substantial space for narrative and required the physician to write in their own parameters regarding Plaintiff's ability to lift/carry and perform nonexertional postures.  For example, the form posed the question "[b]ased upon examination and treatment of [Plaintiff's] medical impairments, please state his ability to perform the following functions in a full-time work setting."  (T. 585.)  The form then provided a list of functions, such as lifting/carrying, but did not provide specific "check-box" limitations (such at 0-10lbs, 10-15lbs, etc.) and instead left a blank space to be filled out by the provider.  (*Id.*)  Therefore, although the forms did contain some "check-box" questions, providers were not pigeonholed into forgone conclusions because the majority of limitations listed provided a blank space for the provider to write their own conclusions.

Third, the ALJ stated that the treating sources failed to provide environmental limitations.  (T. 34-35.)  To be sure, Dr. Rabner and Nurse Formann noted on their medical source statement that Plaintiff had no environmental limitations.  (T. 586.)

However, Dr. Sexton and Dr. Gibson both opined Plaintiff had environmental limitations. (T. 582, 578.)  The ALJ apparently misread the forms.

Fourth, the ALJ afforded Dr. Sexton's opinion less weight, in part, because the doctor used the acronym "DOE" without providing an explanation.  (T. 35.)  Failure to define a medical acronym is not a good reason for discrediting the entirety of a medical source opinion.  As remand is recommended for a proper evaluation of the treating sources' statements, the ALJ may request clarification from Dr. Sexton regarding the acronym DOE.  The ALJ also afforded Dr. Rabner and Nurse Formann's statement less weight because the form was completed by Nurse Forman and "only signed" by Dr. Rabner.  This conclusion is speculative at best, because there is no indication from the form or the record that Dr. Rabner did not review the information contained therein or that the form was not completed as part of a joint effort.

Plaintiff further asserts that the ALJ erred in affording greater weight to the consultative examiner and non-examining medical consultants than the treating sources.  (Dkt. No. 11 at 8-9 [Pl.'s Mem. of Law].)  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015)); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016);

*Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016) (the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence). However, because remand is necessary for a proper evaluation of the treating source opinion, on remand the ALJ should also re-examine Dr. Ganesh's opinion.

In this case there are inadequacies in the ALJ's analysis of the medical source opinion and an apparent misreading of portions of the medical record. Given the need for further proceedings to properly consider the opinion evidence and the questions that error raises about the validity of the credibility and step five findings, it is also recommended on remand that the ALJ should take care to provide a clearer explanation of the basis for his findings in those areas as well.

**B. The ALJ's Step Five Determination**

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404,1520(f), 416.920(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The ALJ determined that based on Plaintiff's date of birth, he was 49 years old as of his alleged onset date and therefore a "younger individual." (T. 36.) The ALJ further

stated that Plaintiff's age category changed to "closely approaching advanced age" at the time of the hearing. (*Id.*) The ALJ determined that, under the guidance of the Grids, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could perform. (*Id.*)

Plaintiff asserts that the ALJ failed to consider Plaintiff's "borderline age[3]" at step five. (Dkt. No. 11 at 12-14 [Pl.'s Mem. of Law].) Here, contrary to Plaintiff's assertion, the ALJ properly determined that at the time of the hearing Plaintiff was "closely approaching advanced age." (T. 36.) However, despite the heading and initial paragraph of Plaintiff's argument, what he actually argues is that the ALJ failed to consider Plaintiff's limited education. (Dkt. No. 11 at 12-13 [Pl.'s Mem. of Law].) Plaintiff's argument fails.

Plaintiff asserts that his limited language abilities and special education limitations should have been considered at step five. (Dkt. No. 11 at 12-13 [Pl.'s Mem.

---

[3]    The regulations do not provide any bright-line rule for determining which cases are "borderline." SSR 83-10 states that: "No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach." SSR 83-10, 1983 WL 31251, at *8. The SSA's Hearings, Appeal and Litigation Law Manual *209 ("HALLEX") provides the following guidance:

> If a claimant is within a few days to a few months of reaching an older age category [. . .], and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case. *See* 20 C.F.R. 404.1563 and 416.963.
> SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months.

HALLEX I-2-2-42, Borderline Age, 2016 WL 1167001, at *1 (Mar. 25, 2016).

Most district courts within the Second Circuit follow the HALLEX and hold that a period of up to six months is borderline. *Torres v. Comm'r of Soc. Sec.,* No. 14-CV-6438, 2015 WL 5444888, at *10 (W.D.N.Y. Sept. 15, 2015) (collecting cases); *Souliere v. Colvin,* No. 2:13-CV-236 (JME), 2015 WL 93827, at *5 (D. Vt. Jan. 7, 2015) (same).

of Law].)  In support of his argument Plaintiff relies on his own testimony that he was in special education classes and could "read some to get [] by" and had difficulty spelling. (T. 74-75.)  Under the Grids a finding of disabled is warranted where a person is limited to light work, closely approaching advance age, has unskilled or no previous work experience, and is also "limited by illiteracy or inability to communicate in English."  20 C.F.R. App'x 2, Subpart P, Part 404, § 202.00.  The Regulations define illiteracy to mean "the *inability* to read or write."  *Id.* at § 416.964(b)(1) (emphasis added).  There is no evidence in the record that Plaintiff was illiterate or unable to communicate in English.  Plaintiff testified at the hearing, in English, that he could read enough to "get by" and had difficulty (not an inability) spelling.  (T. 74-75.)  Therefore, the ALJ properly determined that Plaintiff could communicate in English.  (T. 36.)

However, due to the errors already identified and the impact they may have on Plaintiff's RFC, the ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy.

### C. Remand for Calculation of Benefits

Plaintiff alleges that remand solely for calculation of benefits is warranted, or in the alternative, that remand for further proceedings is appropriate.  (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].)  A remand for calculation of benefits is appropriate only if the record compels a conclusion that a plaintiff is disabled under the application of the correct legal principles.  *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  For the reasons stated herein, remand for further administrative proceedings is recommended.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        November 16, 2017

William B. Mitchell Carter
U.S. Magistrate Judge

16